319-0636 Robert Cronholm, Appalachian v. Board of Trustees of the Lockport Township FPD Firefighters' Pension Fund appellant. Good afternoon, Mr. Murda-Lindsay. Good afternoon. Good afternoon. Your name is Murda-Lindsay? Am I pronouncing that correctly? Yes, correct. Murda-Lindsay. If you want to present, anytime you're ready. Thank you, Your Honor, and may it please the Court. My name is John Murda-Lindsay, and I represent the appellant, the Board of Trustees of the Lockport Township FPD Firefighters' Pension Fund, or the Lockport Fund for short. There's no dispute that Robert Cronholm is being overpaid by the Lockport Fund. As the Court knows, Cronholm draws a combined creditable service pension from both the Lockport Fund and the Oakbrook Firefighters' Pension Fund. The two funds split this benefit proportionally, so the relationship resembles a seesaw. When one share increases, the other decreases. So, when the Oakbrook Fund increased its share of Cronholm's benefit six months after it was originally granted, Lockport's share should have decreased, but it didn't, likely because no one ever told the Lockport Fund about Oakbrook's modification until it was discovered in 2016. Cronholm enjoyed the benefit of the Oakbrook Fund's upward correction and Lockport's original payout for years, but when the Lockport Fund found out and stopped overpaying him, he objected and filed this administrative review action. He wants to keep both sides of the seesaw up in the air. The Court should overrule Cronholm's objections to the Lockport Fund's correction and affirm its decision for at least the following reasons. First, there's no constitutional problem with correcting overpaid benefits. Second, there is no contractual problem with correcting overpaid pensions either, nor is there any retroactivity problem with the correction statute used by the Lockport Fund. And finally, there's no statute of limitations issue either. Beginning first with the constitutional concerns, Cronholm is simply wrong to assert that the Pension Protection Clause of the Illinois Constitution protects his overpayments. That notion was conclusively dispelled in the recent City of Countryside case, cited in our brief. The Court reaffirmed that familiar principle that the General Assembly can't pass a law that diminishes vested benefits that existed at the time a member enters the retirement system. To do otherwise would violate the contract between the member and the pension fund. But overpayments are not vested benefits, and they're therefore not protected by the Constitution. As the Countryside Court reasoned, pensioners can only contract for benefits allowed by law. And by their very nature, overpayments exceed the level of law by law. They're a deviation from a level allowed by law. And therefore, Cronholm simply has no constitutional claim to continued overpayment. Second, there's also no contractual problem here either. And they fail for similar reasons as the constitutional arguments. For one, only new legislative attempts to diminish vested benefits are prohibited. And as the Countryside case demonstrates, correction doesn't take away anything that Cronholm is entitled to. To the contrary, it ensures he's getting what he's bargained for. No more, no less. More fundamentally, benefit correction has always been part of the contract between Cronholm and the Lockport Fund. And that's especially made clear by the fact that Cronholm had no issue with the Oakbrook Fund correcting his benefit upwards. Even at that time, there was no correction statute in place. And also fundamentally, the pension code isn't fixed at the time that the member enters the retirement service. Benefits can always be added, even after that member joins. So, perfect example, when Cronholm joined the Lockport Fund in 1980, the combined creditable service pension, which he retired on, wasn't even yet in existence. That came in in 2004. Yet, Cronholm still was able to have the benefit of that when he retired in 2009. So, although Cronholm may not like to admit it, the correction statute actually benefits him, as well as the fund and its other participants. Without the ability to correct an overpaid benefit, the Lockport Fund could face potential planned disqualification by the IRS. That's for failure to abide by the exclusive benefit rule set by federal statute, as well as IRS regulations prohibiting overpayments. Now, the consequences of disqualification, and we go over this in detail in our brief, but they are very, very dire. For one, participants would have to report the municipal contributions made on their behalf as taxable income, and that's sizable. Second of all, participants could not make their mandatory, statutory contributions on a pre-tax basis. Currently, that's 9.455% of the firefighter's salary, which is almost a 10% increase in the amount of taxable income they would have. And third, the fund would have to pay taxes on its holdings, and each dollar of taxes it spends on taxes would detract from the payment of bona fide pension benefits, or from the pool of investment funds that it could be using to gain money for pensioners down the line. So, in all, the pension correction statute provides a benefit, and is indeed needed to avoid those outcomes. And that's what Kronholm contracted for at the outset, membership in a functioning firefighter's pension fund. When he joined in 1980, he didn't contract to be a part of a malfunctioning pension system. He wanted the benefits of a full-fledged, fully qualified plan under the IRS statutes and the Internal Revenue Code. The correction statute is also clearly a benefit to members because it allows underpaid pensioners to be made whole. In the absence of that language, a firefighter's pension fund wouldn't have any statutory power to accomplish that goal. So, you take the goose with the gander. You take the good with the bad. On the one hand, the correction statute allows you to move a benefit up if needed, but at the trade-off of having it moved down also if called for. So, in sum, there is no contractual problem with the board's decision to stop overpaying Kronholm either. Moving now to retroactivity. There's a few steps to retroactivity, but at the outset, I would like to mention that we believe retroactivity is a red herring in this case. The Lockport Fund did not apply the correction statute retroactively. It only said, from this point forward, we are paying you what you are owed. That action occurred in the present and in the future. It makes no reference to the past. At most, it relied on antecedent facts, namely the mistake that happened in the past. But as our Supreme Court has noted, reliance on antecedent facts alone doesn't make a statute impermissibly retroactive. So, there's really no need to reach retroactivity in the first place. Now, the elephant in the room here is that there is a case, the Wray case, that suggests that the police pension correction statute, which is identical to the one for firefighters and the one relied on by the Lockport Fund, that says that the statute cannot be applied retroactively. To be clear, we contend that Wray was wrongly decided and for a host of reasons. Wray was an accounting malpractice action that tangentially involved calculation of a pension benefit. The pension board there had no occasion to be a party and the parties that were there assumed that the modern police correction statute applied. And when I say modern, I need to make a note that the modern police correction statute mimics almost exactly the firefighters correction statute that the Lockport Fund used. But unlike for firefighters, the police side already had a correction statute. So the Wray court was called upon to decide which version of the correction statute applied, the old version or the new version. Now, without any briefing from the parties on that subject, the court decided that the modern police correction statute did not apply over the earlier version. To the contrary, it concluded that there was an affirmative legislative expression to not have that modern statute apply. But the Wray court analysis was misguided. The plain language of the statute, just like the firefighter statute, shows that it tracks pre-enactment errors. If a pensioner is overpaid, a pension fund has to fix the error, quote, after the mistake is discovered, end quote. And also that pension fund can recover arrears if that mistake isn't yet three years old or it isn't the result of fraud. And if there's an underpayment, the pension fund has to make up the difference in a lump sum immediately and with interest. But skipping all of that, the Wray court thought that the police correction statute was missing language about retroactivity. And it came to that conclusion because it saw other correction mechanisms being installed in other pension systems. For example, the judge's retirement system, the state employee's retirement system, and the general assembly retirement system. Those statutes expressly said that it applies on, before, and after. And the Wray court took that to mean, oh, the police and fire don't have some similar language. But that's incorrect. For one, the four corners of the statute do make reference to what happens in the past. But even that aside, the expression of retroactivity, although in different terms, is present in a neighboring statute. In the case of the firefighter statute, it's literally the next provision that exempts the correction from, quote, all time limitations under the administrative review law for benefit correction. So although those formulas or formulations are different, it doesn't mean that the legislature decided to leave pre-2014 mistakes on track for police and thereby firefighters. And it could not have meant that. To do otherwise would be an absurd result. Now, the Wray court was also blind to the flip side of its holding. As a result of Wray, pensioners being underpaid because of a mistake predating 2014 now don't have a way to be made whole. Pension statutes are to be liberally construed in favor of the right of participants. And Wray's interpretation of the police correction statute is anything but liberal. The only cogent way to view the benefit correction statute, both on the police side and on the fire side, is that they reach pre-enactment errors. And therefore, Wray should not control this case. Now, with those issues disposed of, the board rightly concluded that the correction statute applied. It concluded there was a mistake within the meaning of the statute. Most prominently, the Oak Brook Fund increasing its share after the benefit was created by both funds and not informing the Lockport Fund. And that Crown Homes overpayment resulting from Oak Brook's increase had to be eliminated. And if that wasn't done, the overpayments would result in Crown Home continuing to get benefits that he did not earn and were not allowed for at the time he joined the pension system. Now, Crown Home tries to say that the board's identified mistakes are excluded by the correction statute. And that's not the case. Again, the correction statute needs to be given a liberal interpretation because it's a benefit. The correction statute can cover actions taken by third parties like the Oak Brook Fund. And it's supported by the statutory text. At the outset, the statute gives an example of what constitutes a mistake. It uses the word includes. And as we know, the Illinois Supreme Court says that when you see includes in a statute like that, what follows is a representative list.  And then right after that in the statute, it continues on to say what cannot be a mistake. And there is no mention of mistakes executed by a third party or a third party pension fund in that latter section. Crown Home's interpretation of that restrictive interpretation impermissibly reads in such a limitation. And that should be disregarded. A final word on Crown Home statute of limitations arguments. First, they're waived. He failed to assert that there was a statute of limitations problem before the board. And case law makes absolutely clear he cannot do so now on administrative review. The time to present arguments was to the board, and he missed that window. Nor would the statute of limitations bar any correction anyway. He can't surmount the fact that the statute of limitations does not apply to governmental entities like the Lockport Fund acting in its public capacity. So there's no statute of limitations problem either. In conclusion, Crown Home has never disputed that he's been overpaid. That overpayment would have never happened, but for Oakbrook's increase of its share of this proportional benefit. Crown Home never objected to Oakbrook's side of the equation going up. He cannot complain now that Lockport's is going down correspondingly. And as a result, the court should affirm the decision of the Lockport board to permanently correct Crown Home's overpaid benefit. Thank you and I'll yield the remainder of my time. Thank you, Mr. Martins. Thank you, Mr. Raja. Yes. Thank you. Thank you, your honor. Afternoon, your honors, opposing counsel. May it please the court. My name is Thomas Raja. I represent Robert Crown Home, the appellee in this matter. And some brief history, I think is important to put this in context. Mr. Crown Home retired on October 31st of 2009. He enjoyed the benefits of his retirement for upwards of nine years until the Lockport pension fund unilaterally determined that it was going to reduce its benefit based on an alleged, quote unquote, mistake that its accountants had discovered. Now, in reducing the benefits, the pension board and its decision in order exclusively relies upon section 4-138.10 of the Illinois pension code to give it jurisdiction to reduce the benefit. And it simply, in this case, does not have jurisdiction to nine years after awarded a benefit to reduce that benefit. The effective date of the mistake provision 4-138.10 is August 26th of 2014. That statute did not come in until almost nine years after Crown Home, I'm sorry, Crown Home retired in 2009. The effective date is 2014. So essentially five years after he retired, that amendment was put on the books. Therefore, it cannot apply to him. It was not in effect when he retired, and it was not in effect at the time that he was hired. So the mandatory statute, you do have to look as to whether or not that would retroactively apply to Crown Home, which we say it doesn't. I will get to that aspect of the case in a second. But there's another reason the board does not have jurisdiction in this matter. And that is, it has a statute of limitations problem. The word of benefits, as I mentioned in 2009, and then in 2018, nine years later, it's claiming that there's a mistake and they need to reduce his benefit. Well, as I mentioned in our brief, the statute of limitations is a five-year statute of limitations for the statutory issue here. Searching to go back over nine years, they're barred from having jurisdiction in this case, pursuant to the statute of limitations. Counsel indicates that argument's been waived because it wasn't brought before the board. There's adequate, ample case law that indicates statute of limitation arguments questions the jurisdiction of the board and is not required to be brought up before the agency to determine its own jurisdiction. So that argument certainly has not been waived. So for those two reasons, we think that the circuit court got this case right in reversing the pension board and that there was not jurisdiction for the board to go back and try to amend its decision it had made granting benefits in 2009. Now, secondly, the mistake provision that the board utilizes to reduce the benefit doesn't apply to Mr. Crownholm First, the reason I mentioned is that you can't retroactively apply this benefit. It wasn't expressly asserted in the statute. In the Ray case, that is almost directly on point with this case dealing with a police officer and under the police pension code dealt with the exact same provision, the new provision that's in the firefighters pension code when it deals with the mistake. And in that case, the court indicated that they would have to apply the earlier version because the statute did not indicate that it was to be retroactively applied, unlike the sister statutes for downstate employees, General Assembly judges, where it's specifically and expressly stated in the statute that the statute should be retroactively applied. It did not do that in the case of firefighters pension, so therefore being appropriate to try to retroactively apply it. And the pension board tries to say, well, you don't have to get to retroactive application because we're applying, we're adjusting the benefit in the future. Well, first, the pension board did attempt to seek overpayment from the pensioner, and that's why he got counsel involved when they saw it at first $12,000 alleged overpayment, and then it was reduced to a $2,000 alleged overpayment. And secondly, when they when they tried to adjust the benefit. It was it was clear that they didn't have any retroactive ability to do that. The Illinois Constitution, Article 13, Section 5, indicates that pension benefits are contractual relationship in the terms of the pension plan. In effect, at the time that the member becomes part of the pension plan is the contractual terms that the member enjoys. When Mr. Crownholm was hired by the Lockport Pension Fund in May of 2005, there was no mistake provision provided for in the pension code. And when he retired in 2009, the mistake provision didn't exist. Therefore, it is illegal for the pension fund to attempt to use that provision to reduce a benefit when it certainly had an ability to do that through administrative review prior to the enactment of the mistake provision. Now, counsel wants to say we are adjusting in the future. Therefore, there's no need to get to retroactivity. However, the Wray case made it clear that the triggering event is the mistake itself. And that is what the courts need to look at to determine whether or not it should be retroactively applied. Well, here are the alleged mistake occurred in 2009, wasn't discovered until 2016. And they tried to utilize a new statutory provision. The Wray case is sound, on point indicates the triggering event is what you have to determine if you're going to apply retroactivity. 2009 was the triggering event in this case. Therefore, there is no retroactivity use of the mistake provision that the pension board tried to utilize in this case. Even if you were to disregard the jurisdictional arguments of the appellee and the constitutional argument that the contract in effect at the time of his hire is what should apply and looked at the actual mistake provision and attempted to apply that to this case, you still should find in favor of Mr. Crownholm. The reason is the express language in the statute defines who can bring a, who can make a mistake. First of all, and it says either the participant or the pension fund, neither of which the board alleges here, they claim it's a mistake by a separate pension fund, the Oak Brook pension fund, not themselves or the participant and not informing them. Secondly, when you look at what is excluded as a mistake, a mistake is a clerical or administrative error. What's excluded is expressly stated in the statute as any in no case shall a mistake include any benefit or aspect of a benefit based on salary, service credit, or other factors significant to the calculation  And that's exactly what the board is trying to claim as a mistake here. It was the calculation of the salary and service credit of Mr. Crownholm by the Oak Brook pension fund and the Lockport's failure to notice, correct, recognize that alleged mistake. And that went unnoticed for at least seven years before the board tried to do anything about it. In fact, the board never recognized the mistake. It was a new accounting firm that they had hired. Council, I have a quick question for you. Sorry to interrupt, but in 2010, Oak Brook changed the termination salary amount and they bumped it up by $600, which resulted in a miscalculation. But that calculation benefited your client. At that time, your client didn't raise any objection to correcting the mistake. So that tells me this is just kind of the course that mistakes are treated with, they're corrected and folks go on. When Oak Brook found the mistake in salary, was there an adjustment to the Lockport pension at that time? So the short answer to that, Judge, is no, there was not. And it's not really, I understand your question. I mean, like, well, just business as usual to correct a mistake. But what happened here is the extra $600 that Oak Brook added was because they didn't realize there was a longevity that should have been added. And that was done within a few months of their original determination of what his salary should have been. And in those cases, and when it benefits, as counsel mentioned, the statute is supposed to be liberally construed to the benefit of the participant. And in a case where a mistake would benefit them back in 2009, there being no mistake provision in the code, that would happen where they would adjust it and move on. Even if it was to the detriment. It had taken them until 2013 to discover the salary discrepancy. Would you be making the same argument? Unlikely, your honor, because I don't think we'd be here when they're giving people money. If they're taking money away, we would certainly. And that's why we are here. I mean, but it's not just because it's giving money or taking money away. It's because the, how the board is trying to do it is simply impermissible under the law. And they have no, the boards are governed by the statute. As an administrative agency, they only have that authority. The statute provides them. And they just simply don't have, the statute doesn't give them the authority to reduce the benefit. They're paying the same benefit. Now that they paid him in 2009. Other than regular cost of living adjustments. What they're really arguing is that, well, hey, Oak Brook decided to pay them a little more. So we should get the benefit of Oak Brook's adjustment and who they really should be looking to take money back from should be the Oak Brook pension fund. Not, not their own beneficiary or participant who did nothing wrong here. You also suggested that they should take action against the accountant. I found that, that made me smile in the brief. Well, you know, when you look at it, they've mentioned their fiduciary responsibilities, judge in your fiduciary responsibilities are to your participants first and foremost. And nowhere in this record do you see them take issue with Oak Brook pension fund with the accounting firm that had happened to represent both the Oak Brook fund as well as their new fund when they hired them in 2016. And you would think that that would be the first course of action is to seek money back or some sort of correction with either the prior fund or with their accounting firm. But instead they went directly after their own beneficiary. And as we feel without any permissible basis for doing so, if this had occurred after 2014, I think they would be able to use that mistake provision. However, it happened in 2009 and went many, many years without it. I'm just thinking about the precedent that we are establishing. If we decide the case the way you would like us to decide it. And that would seem to be that if your mistake results in a decrease, the board doesn't have jurisdiction to adjust it. But if the mistake would result in an increase between 2009 and 2013, then the board does have jurisdiction to adjust it. And I'm just trying to reconcile that inconsistency in my mind. So Judge, I don't think this court will be setting any precedent because the Ray case has already indicated  some statutory authority to make an adjustment to the pension code. And it's very possible, Your Honor, the adjustment by the Oak Brook Pension Fund may not have been entirely statutorily permissible when they increased it by $600, having already decided that case in the 35-day administrative review period passing, but nobody challenged it. And I suggest it's too late to challenge it at this point because they've issued several decisions in order since then. But the Ray case, really, if this court were to affirm the circuit court and reverse the pension board, you're on par with what the Ray case decided. And that is you have to look first and foremost is what statutory authority does the board have? And in the Ray case, they went to the prior version of the statute. Here, there is no prior version, but what did exist was administrative review law. So there was an ability to fix a mistake prior to the 2014 mistake provision being put in the pension code. There certainly is. Now, if this were to occur, there's that mistake provision that any pension fund could utilize. So because all the events occurred prior to 2014, I don't think this court would be setting any far-reaching precedent for any current cases that would come along. As far as the IRS implications that council brought up first, that was never a basis for the board seeking to reduce benefits. It's not any part of their decision in order. It's a novel argument that they present for the first time before the appellate court. And their whole basis for bringing it up is there has to be some ability for a board to correct a pension if there's a mistake committed. There's always been the ability to do that. One, through administrative review that nobody sought in this case, including the Lockport Pension Fund. And secondly, now through the mistake provision that's in the statute, that can always be corrected. Unfortunately for the board, Mr. Crownholm has come to rely upon the pension that he was promised when he was awarded in 2009 to try to first seek overpayments and then adjust his benefit in 2018, nine years after that benefit was awarded, simply because Lockport wants to reduce the amount they pay him, just isn't in compliance with the statute. They don't have the legal ability to do it. It's beyond the statute of limitations. And for those reasons, we feel that this court should affirm the circuit court's reversal of the pension board's reduction of benefits to Firefighter Crownholm. Thank you. Also, I have one last question for you. You're measuring the retroactivity based on the date that the pension was set in 2009. What about using the date that the mistake is discovered? Because this mistake was discovered, I think in 2016, and the mistake statute had been in effect for two years at that point in time. So was it truly being applied retroactively to the mistake? Yeah, so I mean, the date it's discovered, I think it's just purely happenstance. The rate court makes it very clear that the whole provision is based on the mistake. I mean, it's put in there to say, hey, when a mistake is recognized, you know, that's, you should go ahead and correct it. And the mistake is really what the basis of the entire statute is about, and that's, I think the rate court got it right, that that is the triggering event. That is what you should look at as to whether or not there was retroactivity or not. If this, you know, possibly if this mistake had occurred in 2011, maybe you could make an argument that the statute provides that seeing that if you claw back three years. Yeah, that's a good point. Okay, that helps me understand your position. I, that helps me understand your position. I appreciate that concession. All right, thank you. Thank you, Judge. Could you comment on the supplemental authority? I'm sorry, I don't understand the question, Justice. The supplemental authority that was just added. Are you not aware of that? I'm not sure what you're referring to, Judge. Okay, maybe you, maybe we need to talk about some kind of supplemental filing. Did we not just get a new case that was cited in this case? Not that I'm aware of, Judge. Okay. Nor am I, Judge. Well, somebody filed to add additional authority in this case, I thought. I'll check it out. I may be mistaken. I may be mixing it up with another case. No problem. Okay, sorry. That's okay. You just had me confused as well. I didn't, I don't think there was any supplemental authority in this case, Judge. Okay. Yes, ma'am. Okay. Mr. Marlins, do you have any rebuttal? Yes, thank you. Briefly, Your Honor. First of all, to the extent that Kronholm wants to claim that this is a big hit to him, the difference is 30 bucks a month. It's really not a big deal. Furthermore, as Justice Wright pointed out, the touchdown here really needs to be when the mistake is discovered. First of all, let's turn to the statute in question here. The correction statute says you have to correct the benefit to the appropriate level as soon as practicable after the mistake is discovered. So we're charged as the pension fund when we discover a mistake, we have to go and correct it. Notwithstanding whether it makes no difference when the mistake itself occurred. If we see a mistake, we have to go fix it. And that's part of our fiduciary duties as well as the duty imposed by the statute. Another follow up to Justice Wright's question about the corresponding correction after Oakbrook made its change. So this is the output of that. This is the Lockport Fund's attempt to put things back in harmony, to put the seesaw back at equal level after learning about the fact  without us knowing. And furthermore, Justice Wright's question just as a matter of equity here, you can't have it both ways. Either we have jurisdiction to increase a benefit and decrease a benefit, or we have no jurisdiction at all. So there is no way to cogently say that back when there was no correction statute and the 35-day window on the administrative review law passed, that the Oakbrook Fund could have put its benefit up. The fact that that was done, it's in stone. It's set in stone. It was forever ago. We can't challenge that now, but we can put things right from our end as it should have been done back then. And as a final point, in reciting the statute, the correction statute, counsel omitted a few very important words. Now, there are certain exclusions in the correction statute to be certain, but they mostly deal with factors relating to a benefit known to the fund at the time of retirement. There's no possible way that the Lockport Fund could have known that the Oakbrook Fund was going to increase its benefit at the time of retirement. That happened six months later. And for that reason, we don't think that this case falls within the exclusion. We think this is purely on point with the mistake statute. It's a run-of-the-mill mistake, and we need to correct it to fulfill our fiduciary responsibilities. And if there are no further questions, I have no further comment. In case you have any further questions, I guess not. Thank you both, by the way, for your arguments today. It was very interesting, and we'd rather have something in writing for you within a short time. We'll now take a recess until tomorrow morning at 9 o'clock.